IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| Kevin Vado )<br>132 Wild Dogwood Way )<br>Greenville, SC 29605 )<br>)<br>      Plaintiff, )<br>)<br>      v. )<br>)<br>WELLS FARGO BANK, NA )<br>525 South Tryon Street )<br>Charlotte, NC 28202 )<br>)<br>  **Serve also:** )<br>  WELLS FARGO BANK, NA )<br>  c/o Corporate Service Company )<br>  2626 Glenwood Avenue, Suite 550 )<br>  Raleigh, NC 27608 )<br>)<br>      Defendant. ) | **COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Kevin Vado, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## **PARTIES**

1. Vado is a resident of the city of Greenville, county of Greenville, state of North Carolina.

2. Wells Fargo is a national association that operates a place of business located at 525 South Tryon Street, Charlotte, NC 28202.

3. Wells Fargo Bank was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq*. and 29 U.S.C § 2601, *et seq*.

4. Wells Fargo Bank was at all times hereinafter mentioned a "person" within the meaning of 29 USC § 203(a). AND/OR an "employer" within the meaning of 29 USC § 2611(4)(A).

## **JURISDICTION & VENUE**

5. Wells Fargo hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Wells Fargo comports with due process.

6. This cause of action arose from or relates to the contracts of Wells Fargo with North Carolina residents, thereby conferring specific jurisdiction over Wells Fargo.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq* and Family and Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq*.

8. Venue is proper in this District because the wrongs herein alleged occurred in this District.

9. Within 180 days of the conduct alleged below, Vado filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 430-2024-02149 against Wells Fargo operating at 525 South Tryon Street, Charlotte, NC 28202.

10. On or about 5/30/2025 the EEOC issued and mailed a Notice of Right to Sue letter to Vado regarding the Charges of Discrimination brought by Vado against Wells Fargo in EEOC Agency Charge No. 430-2024-02149.

11. Vado received him Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Vado has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Vado has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

14. Vado is a former employee of Wells Fargo.

2

15. Vado worked for Wells Fargo as a Business Relationship Support Specialist.

16. Vado began working for Wells Fargo starting on or about August 2, 2021.

17. At all relevant times herein, Vado's work performance met or exceeded Wells Fargo's legitimate expectations.

18. Vado suffers from attention deficit hyperactivity disorder ("ADHD"), anxiety, and depression. ("Vado's Disabilities")

19. Vado's Disabilities substantially limits Vado's major life activities, including thinking, communicating, caring for himself, and working.

20. Vado is disabled within the meaning of the ADA.

21. At the time that Vado was hired, Vado did not disclose his disabilities.

22. In approximately September of 2022 there was a national shortage of ADHD medication.

23. Vado suffered from the national shortage of ADHD medication.

24. Vado also suffered from personal matters exacerbating Vado's Disabilities throughout October and November 2022.

25. While going through the national shortage and personal matters, Vado informed his managers about his disabilities for the first time.

26. Vado notified Shawn Baker about Vado's disabilities.

27. Baker was Vado's direct supervisor.

28. Baker was the Business Relationship Support Manager for Wells Fargo.

29. Baker had the authority to hire, fire, or discipline employees.

30. Baker had the authority to hire, fire, or discipline Vado.

31. Upon information and belief, Baker is not disabled.

32. Vado also notified Baker about the national shortage and his personal matters.

33. Vado notified Brandy Sisson about Vado's Disabilities.

34. Sisson was one of Vado's supervisors.

35. Sisson was a Business Manager for Wells Fargo.

36. Sisson had the authority to hire, fire, or discipline employees.

37. Sisson had the authority to hire, fire, or discipline Vado.

38. As a result of Vado's notifying Baker and Sisson about Vado's Disabilities, Wells Fargo perceived Vado as being disabled.

39. Despite this actual or perceived disabling condition, Vado was still able to perform the essential functions of his job.

40. After notifying Baker and Sisson of Vado's Disabilities, Vado noticed an immediate change in the way that Baker and Sisson treated Vado.

41. In approximately October of 2022, Sisson began discriminating against Vado on the basis of his disabilities. ("Sisson's Discrimination")

42. Sisson's Discrimination included micromanaging Vado.

43. Sisson did not micromanage other non-disabled employees.

44. Sisson's Discrimination included berating Vado for his performance.

45. Sisson did not berate other non-disabled employees when critiquing their performance.

46. After Sisson's Discrimination began, Vado complained that he was being discriminated against by Baker and Sisson on the basis of his disabilities. ("Vado's First Complaint of Discrimination")

47. Vado's First Complaint of Discrimination also stated that Vado's performance had not been an issue before Vado disclosed Vado's disabilities to Baker and Sisson.

48. Vado's First Complaint of Discrimination was made directly to Baker and Sisson.

49. Shortly after Vado's First Complaint of Discrimination, Baker put Vado on a performance improvement plan ("PIP").

50. Baker stated that the purported reason for the PIP was because Vado left his desk too often.

51. Baker stated that the purported reason for the PIP was because Vado was not responsive enough to coworkers.

52. Baker stated that the purported reason for the PIP was because Vado had made mistakes on compliance reviews.

53. Under the PIP, Baker and Sisson continued to nitpick Vado's work and issue unfair criticisms against him through 2024.

54. Baker and Sisson's unfair criticisms were unfair because the criticisms blamed Vado for things that were out of his control.

55. Baker and Sisson's unfair criticisms were unfair because the criticisms remained despite Vado presenting evidence to the contrary.

56. Baker and Sisson's unfair criticisms were not made against non-disabled employees.

57. Baker did not unfairly criticize Vado before Vado disclosed Vado's disabilities.

58. Sisson did not unfairly criticize Vado before Vado disclosed Vado's disabilities.

59. Baker intentionally criticized Vado in order to cause him to resign.

60. Sisson intentionally criticized Vado in order to cause him to resign.

61. Baker and Sisson nitpicked Vado's work and issued unfair criticisms against him because of his disabilities.

62. Through the PIP, Baker and Sisson intentionally attempted to cause Vado to resign.

63. In early 2023, Baker began to make statements to Vado bearing on his disability. ("Baker's Disability Statements")

64. Baker's Disability Statements attempted to distance his criticisms of Vado's work performance from Baker's perception of Vado's Disability.

65. Baker's Disability Statements compared Vado to Baker's child who had their own struggles with disabilities.

66. Baker's Disability Statements also gave Vado unsolicited advice as to how to manage Vado's disabilities.

67. When hearing Baker's Disability Statements, Vado attempted to explain that the issues he was being blamed for were outside of his role responsibilities and further, out of his control.

68. When hearing Baker's Disability Statements, Vado provided documentation to demonstrate that his performance was not the issue.

69. When hearing Baker's Disability Statements, Vado opposed Baker's position that Vado's performance was less than meeting Wells Fargo's legitimate business expectations.

70. When hearing Baker's Disability Statements, Vado stated that his disabilities were not affecting his performance.

71. On or about March 18, 2023, Vado reported that management's treatment of Vado was causing him mental distress to Baker.

72. Baker did not respond to Vado's March 18, 2023 report.

73. Instead of responding to Vado's March 18, 2023 report, Baker immediately logged out of Skype Messenger and avoided Vado for several days.

74. On or about March 21, 2023, Vado complained to Baker about disability discrimination again. ("Vado's Second Complaint of Discrimination")

75. Rather than genuinely respond to Vado's Second Complaint of Discrimination, Baker responded that he and Sisson treated everyone equally.

76. Baker did not conduct an investigation into Vado's Second Complaint of Discrimination.

77. Baker did not question Sisson about Vado's Second Complaint of Discrimination.

78. Baker did not ask Vado for further information about Vado's Second Complaint of Discrimination.

79. Baker did not get a written statement from Sisson regarding Vado's Second Complaint of Discrimination.

80. Baker did not get a written statement from Vado regarding Vado's Second Complaint of Discrimination.

81. Rather than investigate Vado's Second Complaint of Discrimination, Baker substantially increased Vado's workload.

82. Baker increased Vado's workload in retaliation for Vado's Second Complaint of Discrimination.

83. Baker increased Vado's workload in order to cause Vado to resign from his position.

84. On or about March 22, 2023, Vado requested and went out on leave pursuant to the Family Medical Leave Act. ("Vado's FMLA Leave")

85. Wells Fargo was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C §2611(4).

86. At all times relevant herein, Vado was employed by Wells Fargo for at least 12 months and had at least 1,250 hours of service with Wells Fargo and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. §2611(2)(A).

87. During all relevant times, Vado qualified for FMLA leave.

88. Vado placed Wells Fargo on notice of the need for medical leave.

89. Vado notified Baker at the same time as Vado's FMLA Leave began that Vado required and had been approved for leave.

90. Vado notified Baker that Vado required the FMLA leave because of the discriminatory treatment that he was suffering from. ("Vado's Third Report of Discrimination").

91. Vado's FMLA Leave ended on or about April 27, 2023.

92. When Vado's FMLA Leave ended, Baker assigned Vado a new portfolio.

93. After assigning Vado a new portfolio, Baker went out on leave from June 2023 through September 2023.

94. Vado remained on the new portfolio through September 2023.

95. While working on the new portfolio, Vado worked alongside Robyn Brandon, Ashley Pender, Somera Mollings, Bradley Richard, and Jeffrey Jones.

96. Upon information and belief, Brandon is not disabled.

97. Upon information and belief, Pender is not disabled.

98. Upon information and belief, Mollings is not disabled.

99. Upon information and belief, Richard is not disabled.

100. Upon information and belief, Jones is not disabled.

101. While working on the new portfolio through September 2023, Vado did not receive any complaints about his work performance.

102. When Baker returned to work in September 2023, Baker immediately began to target Vado.

103. Upon information and belief, when Baker returned to work he requested that Brandon, Pender, Mollings, Richard, and Jones keep an eye on Vado and report performance deficiencies.

104. Upon information and belief, Baker requested that Brandon, Pender, Mollings, Richard, and Jones cc Baker on all communications that they had with Vado.

105. Brandon reached out to Vado after Baker's return to work to inform Vado that Baker was targeting Vado.

106. Brandon further informed Vado that she felt like Baker was trying to get rid of Vado.

107. Mollings also reached out to Vado conveying that she also felt that Baker was targeting Vado.

108. Baker did not ask to be cc'd on communications between Brandon, Pender, Mollings, Richard, and Jones.

109. Baker did not ask to be kept informed about performance deficiencies of Brandon, Pender, Mollings, Richard, and Jones.

110. Baker asked to be cc'd on communications with Vado and informed about any of Vado's perceived performance deficiencies because of his disability.

111. Baker asked to be cc'd on communications with Vado and informed about any of Vado's perceived performance deficiencies in order to isolate Vado from his peers.

112. Baker asked to be cc'd on communications with Vado and informed about any of Vado's perceived performance deficiencies in order to cause Vado to quit.

113. On or about September 27, 2023 Baker issued Vado a second PIP. ("Baker's Second PIP")

114. Baker's Second PIP noted that Vado received positive feedback.

115. Baker's Second PIP expressed continued expectations for improvement.

116. After Baker issued Baker's Second PIP, Baker continued to micromanage Vado's work for miniscule business functions.

117. In particular, Baker reprimanded Vado for not using the same format on an email's subject line as two of Vado's five co-workers.

9

Case 3:25-cv-00619-MOC-SCR    Document 1    Filed 08/15/25    Page 9 of 15

118. Baker's micromanagement continued through December 2023.

119. In December 2023, Baker took over half of Vado's workload and gave it to other members of Vado's team.

120. Baker continued to send belittling emails to Vado.

121. Baker's belittling emails stated that he did not believe Vado could do his job.

122. Baker's belittling emails were unsupported by Vado's actual job performance.

123. Baker did not send belittling emails to the non-disabled members of Vado's team.

124. Baker's belittling emails

125. Baker's belittling emails were intended to cause Vado to resign.

126. Baker's belittling emails were intended to create the perception that Vado was failing at his role.

127. Baker discriminated against Vado on the basis of his disability by putting Vado on two PIPs, subjecting Vado to Baker's Discriminatory Comments, substantially increasing Vado's workload, removing half of Vado's workload after he returned from leave, and subjecting Vado to continuous micromanagement and nitpicking while other non-disabled employees were not treated the same way, and continuously belittling Vado via email. ("Baker's Discriminatory Actions")

128. Baker's Discriminatory Actions affected Vado's ability to do his job.

129. A reasonable person in Vado's position would find Baker's Discriminatory Actions to be severe.

130. Vado found Baker's Discriminatory Actions to be severe.

131. Baker's Discriminatory Actions were severe.

132. A reasonable person in Vado's position would find Baker's Discriminatory Actions to be pervasive.

133. Vado found Baker's Discriminatory Actions to be pervasive.

134. Baker's Discriminatory Actions were pervasive.

135. Baker's Discriminatory Actions were intended to cause Vado to resign.

136. Baker's Discriminatory Actions in fact caused Vado to resign.

137. A reasonable person in Vado's position would have resigned as a result of Baker's Discriminatory Actions.

138. Wells Fargo constructively terminated Vado's employment.

139. Wells Fargo constructively terminated Vado's employment because of his disability.

140. Wells Fargo constructively terminated Vado's employment because of his perceived disability.

141. Wells Fargo constructively terminated Vado's employment because of Vado's FMLA Leave.

142. Upon information and belief, Vado's termination of employment, Defendants hired or retained an individual outside of Vado's protected class to replace Vado.

143. As a result of Defendant's conduct, Vado suffered, and will continue to suffer damages.

## COUNT I: <u>HOSTILE WORK ENVIRONMENT ON THE BASIS OF DISABILITY DISCRIMINATION</u>

144. Vado restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

145. During his employment with Wells Fargo, Vado was subjected to offensive and harassing conduct by Wells Fargo Bank based on his disabilities.

146. Defendants knew or should have known of the harassing conduct against Vado by Wells Fargo Bank.

147. Defendants condoned, tolerated and ratified this harassing conduct.

148. This harassing conduct was severe and/or pervasive.

149. This harassing conduct was offensive to Vado.

150. This harassing conduct interfered with Vado's ability to perform his job duties.

151. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Vado.

152. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Vado.

153. As a direct and proximate result of Defendants' conduct, Vado has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: DISABILITY DISCRIMINATION

154. Vado restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

155. Vado suffers from attention deficit hyperactivity disorder, anxiety, and depression.

156. Vado is disabled.

157. In the alternative, Wells Fargo perceived Vado as being disabled.

158. Vado's condition constituted a mental impairment.

159. Vado's condition substantially impaired one or more of his major life activities including thinking, communicating, and working.

160. Wells Fargo perceived Vado's condition to substantially impair one or more of his major life activities including working.

161. Wells Fargo treated Vado differently than other similarly-situated employees based on his disabling condition.

162. Wells Fargo treated Vado differently than other similarly-situated employees based on his perceived disabling condition.

163. On or about 12/18/2023, Defendant terminated Vado's employment without just cause.

164. Defendant terminated Vado's employment based his disability.

165. Defendant terminated Vado's employment based his perceived disability.

166. Wells Fargo violated The American with Disabilities Act.

167. As a direct and proximate result of Defendant's conduct, Vado suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: RETALIATION IN VIOLATION OF THE FMLA

168. Vado restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169. During his employment, Vado utilized FMLA leave.

170. After Vado utilized his qualified FMLA leave, Defendants retaliated against him.

171. Defendants retaliated against Vado by constructively terminating his employment.

172. Defendants willfully retaliated against Vado in violation of U.S.C. § 2615(a).

173. As a direct and proximate result of Defendants' wrongful conduct, Vado is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Kevin Vado demands from Defendants the following:

(a) Issue an order requiring Wells Fargo to restore Vado to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Vado for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Vado's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*
Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:    (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Kevin Vado*

## JURY DEMAND

Plaintiff Kevin Vado demands a trial by jury by the maximum number of jurors permitted.

/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)